### RICKEY LAND & CATTLE CO. v. WOOD et al.*

(Circuit Court of Appeals, Ninth Circuit. March 4, 1907.)

#### No. 1,365.

WATERS AND WATER COURSES—IRRIGATION—APPROPRIATION—QUIETING TITLE
—CROSS-BILL—WHEN ALLOWED.

In a suit to quiet title to an alleged prior appropriation of water for
irrigation purposes in Nevada against appellant, an appropriator on the
same stream in California, appellees, who were also appropriators from
the same stream in Nevada, were made codefendants and filed a cross-
bill, in which they did not deny complainant's priority, but claimed a prior
appropriation as against appellant, and prayed that their right be set-
tled and determined. *Held*, that such cross-bill operated defensively on
behalf of appellees, and was not therefore objectionable as not germane to
the original bill.

Appeal from the Circuit Court of the United States for the District
of Nevada.

For opinion below, see 146 Fed. 574.

The facts of this case differ from those upon which the case of Rickey Land
& Cattle Company v. Miller & Lux (just decided) 152 Fed. 11, proceeded,
only in that, in the original suit of Miller & Lux v. Rickey et al., the present
appellees, being codefendants with Rickey in that suit, filed cross-bills there-
in, whereby they claimed to be entitled to certain appropriations of water
from Walker river for use upon their lands—the diversions being made and
the lands being situated in the state of Nevada; and it was alleged that Rickey
had been and was then diverting the water from the stream above, which de-
prived the cross-complainants of the amount to which they were entitled un-
der their appropriations. Such cross-bills were filed December 20, 1904, and
writs of subpœna were issued thereon, and served upon Rickey the same day.
And it is further shown that the summonses issued in the causes instituted in
the superior court of Mono county, Cal., were served upon appellees December
26, 1904. The appellees obtained, after notice and hearing, an order of court
temporarily restraining the appellant from making any diversions of water
from Walker river to their detriment, from which order this appeal is prose-
cuted.

James F. Peck and Charles C. Boynton, for appellant.

W. C. Van Fleet and W. B. Treadwell (Frohman & Jacobs and
Frank H. Short, of counsel), for appellees.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON,
District Judge.

WOLVERTON, District Judge (after stating the facts). The sin-
gle question urged here, in addition to those determined in the case of
Rickey Land & Cattle Company v. Miller & Lux, 152 Fed. 11, is

*Rehearing denied May 20, 1907.

whether the appellees have a standing in court whereby to maintain their cross-bills as against the appellant. The appellant and the appellees are all codefendants in the cause of Miller & Lux v. Rickey et al., and all citizens of the state of Nevada; and in their cross-bills, it will be seen, the appellees do not dispute the right of diversion by Miller & Lux, nor claim that its diversions are in any way subordinate to theirs, but they do allege that the appropriations of Rickey, whatever they may be, are subject and subordinate to theirs, and pray that the Rickey Land & Cattle Company may be enjoined from diverting the waters of Walker river in any manner to their detriment or injury.

The nature and purpose of a cross-bill in equity have been clearly determined. Says Mr. Justice Nelson, in Ayres v. Carver, 17 How. 591, 595, 15 L. Ed. 179:

"A cross-bill is brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill. It is brought either to obtain a discovery of facts, in aid of the defense to the original bill, or to obtain full and complete relief to all parties as to the matters charged in the original bill. It should not introduce new and distinct matters not embraced in the original bill, as they cannot be properly examined in that suit, but constitute the subject-matter of an original, independent suit. The cross-bill is auxiliary to the proceeding in the original suit, and a dependency upon it. It is said by Lord Hardwicke that both the original and cross-bill constitute but one suit, so intimately are they connected together."

To the same purpose is Ex parte Railroad Co., 95 U. S. 221, 225, 24 L. Ed. 355, where it is said:

"A cross-bill must grow out of the matters alleged in the original bill, and is used to bring the whole dispute before the court, so that there may be a complete decree touching the subject-matter of the action."

So Sanborn, Circuit Judge, says in Stuart v. Hayden, 72 Fed. 402, 410, 18 C. C. A. 618:

"A cross-bill is brought either to aid in the defense of the original suit, or to obtain a complete determination of the controversies between the original complainant and the cross-complainant over the subject-matter of the original bill. If its purpose is different from this, it is not a cross-bill, although it may have a connection with the general subject of the original bill. It may not interpose new controversies between codefendants to the original bill, the decision of which is unnecessary to a complete determination of the controversies between the complainant and the defendants over the subject-matter of the original bill. If it does so, it becomes an original bill, and must be dismissed, because there cannot be two original bills in the same case."

Cross v. De Valle, 1 Wall. 1, 17 L. Ed. 515; Rubber Co. v. Goodyear, 9 Wall. 807, 19 L. Ed. 587; Young v. Colt, 2 Blatchf. 373, Fed. Cas. No. 18,155; Stonemetz Printers' Mach. Co. v. Brown Folding-Mach. Co. (C. C.) 46 Fed. 851.

Counsel for appellant expressly admit that, if the cross-bills are ancillary in purpose and character, they should be entertained regardless of the citizenship of the parties defendant. This reduces the inquiry simply to whether such cross-bills are, in legal contemplation, ancillary to the original bill, or whether they introduce matter foreign to, and disconnected with, the subject-matter of the original suit.

In the light of the foregoing authorities, it may well be premised that,

if the cross-bills operate defensively in behalf of the appellees in some substantial way; then they are pertinent, and afford appellees a standing whereby to assert such rights as will protect them against the suit of complainant in such cause, and this although they might impinge upon the alleged rights of the appellant. A suit respecting water appropriations from a stream is sui generis, and it may, and does frequently, happen that, in order fully to protect the rights of one appropriator against those of another, it is necessary to determine also the rights of the former, not only with reference to those of that other, but also with reference to those of still others upon the same stream. We can adduce no better illustration than that suggested by counsel for appellees. Suppose that A., B., and C. are appropriators of 10 cubic feet of water each from the same stream, within which is running but 30 cubic feet. A., the lower appropriator, sues, and procures a decree and injunction against B. and C. from diverting more water than will allow A.'s 10 cubic feet to come down to him. B. might divert 20 feet, and C. but 10, the amount only to which the latter is entitled, and yet both B. and C. would be guilty of a violation of the injunctive decree, because A. has been deprived of his 10 feet of water. Now, does it not seem perfectly clear that if C. had set up, by cross-bill to A.'s original bill, his interest in the stream, the decree would have been different, and would have gone against B. and C. severally, and not jointly, so that a violation of the injunction by B. would not have been also a violation by C., who was innocent of any wrong? Is there not here matter for substantial defense to sustain such a cross-bill? The answer is obvious. The cross-bill in such a case would be germane to the subject-matter of the original bill, and would operate defensively in behalf of the defendant interposing it. So it would be a matter of defense for C. to have his appropriation fixed as against B. The identical question has received careful consideration, in the case of Ames Realty Co. v. Big Indian Mining Co. (C. C.) 146 Fed. 166, at the hands of Hunt, District Judge, whose reasoning is so able, lucid, and cogent as to scarcely admit of any further controversy. He concludes, after making apt illustration of the case in hand, as follows:

"Will not a court of equity take jurisdiction with respect to this property right as ancillary to its jurisdiction over the case between complainant and first defendant, and, having jurisdiction of the whole proceeding, will it not proceed to do justice between all the parties? Reflection leads me to answer the questions in the affirmative. It is true that, if complainant can secure protection of its own right, junior appropriators might be left to fight out their relative rights among themselves; but, as conditions frequently exist in litigation over usufruct of water, where it is practically impossible to make a just decree between complainant and one defendant without ascertaining rights of defendants as against one another, the court will permit cross-complaints to stand, to the end that a multiplicity of suits may be avoided, so that tedious, expensive, and unnecessary litigation may be saved."

In Union Mill & Mining Co. v. Dangberg (C. C.) 81 Fed. 73, as against the objection that the defendants, of whom there were about 125, were not all jointly interested in their appropriations to the injury of complainant, and therefore should not have been made parties, Judge Hawley has this to say:

"These conflicting rights, whatever they may be, can be determined by one suit. Complainant might not be able to maintain its suit against them singly, for it may be that no one of the respondents acting individually has deprived complainant of all the water to which it is entitled. Complainant is only entitled, if at all, to a certain amount of the water of the river, and it is by the action of all the respondents that it has been deprived of the water to which it claims to be entitled. Each respondent claims the right to divert a given quantity of water. The aggregate thus claimed so reduces the volume of the water in the river as to deprive complainant of the amount to which it is entitled. To this extent, even if there is no such unity or concert of action or common design in the use of the water to injure complainant, there is certainly such a result in the use of the water by the respondents as authorizes complainant to maintain this suit, upon the ground that the action of all the respondents has produced and brought about the injury of which it complains. Every one who contributes to such injury is properly made a party respondent."

The reasoning is cogent in demonstration of the interdependent relations that exist among different appropriators from the same stream, and of the condition that one appropriator cannot always be fully protected against the injunctive process of another, unless· at the same time he has his own rights ascertained and determined with relation to still others who are also subject to the same process. And so we conclude that the order appealed from should be affirmed, and it is so ordered.